WILSON (SEMMES v.). See Case No. 12,-658.

## Case No. 17,833.

### WILSON v. SHERMAN et al.

[1 Blatchf. 536; [1] 1 Fish. Pat. Rep. 361.]

Circuit Court, N. D. New York. June Term, 1850.

PATENT FOR INVENTION—LICENSE TO USE—BREACH OF CONDITION—INJUNCTION—JURISDICTION OF PERSON.

1. A license to run a planing machine contained a restriction, that the licensee should not dress plank or other material for other persons, to be carried out of a specified territory and resold as an article of merchandise. The restriction was both a covenant by the licensee and a condition of the grant. Held, that under no circumstances could the planed article, with the privity or consent of the licensee, be sold out of the territory as an article of merchandise, or, with his privity or consent, be sold within the territory, to be carried out and resold as such article.

2. A provisional injunction would be granted against such licensee to restrain his use of the machine, if applied for during his violation of such restriction.

[Cited in Goodyear v. Congress Rubber Co., Case No. 5,565; McKay v. Smith, 29 Fed. 296; Hat Sweat Manuf'g Co. v. Porter, 34 Fed. 747; Boomer v. United Power Press Co., Case No. 1,638.]

3. But such injunction was refused, where it appeared that the licensee had violated the restriction under a misapprehension of his rights, and had discontinued the violation.

4. Where the alleged unlawful use of the machine was in Vermont, and the suit was brought in New-York, held, that for the purpose of restraining the use of the machine it was only necessary for the court to have jurisdiction of the person of the defendant.

5. This question was involved in the cases of Simpson v. Wilson, 4 How. [45 U. S.] 709, and of Wilson v. Simpson, 9 How. [50 U. S.] 109.

6. But, where it may be necessary to proceed directly against the machine itself, as in extreme cases of contumacy, or of fraudulent contrivance to evade an injunction, the proceedings must be instituted in the district in which the machine is located.

This was an application for a provisional injunction for an infringement of the Woodworth patent [for an "improvement in the method of planing, tonguing, and grooving, and cutting into moldings, or either, plank, boards, or other material, and reducing the same to an equal length and thickness," &c., granted to William Woodworth December 27, 1828, extending for seven years, from December 27, 1842, and reissued July 8, 1845].[2] The defendant Jehaziel Sherman resided at Ferrisburgh, Addison Co., Vt., and the defendant Cook at Whitehall, Washington Co., N. Y. The facts were these: On the 29th of September, 1846, the plaintiff, being assignee of the re-issued patent for the state of Vermont, for the congressional extension of seven

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]
[2] [From Fish. Pat. Rep. 361.]

years commencing December 27th, 1849 (see Wilson v. Rousseau, 4 How. [45 U. S.] 661, 662), executed a license to Chauncey & Akin, to construct, use and vend during said term four Woodworth planing machines in the state of Vermont, within ten miles of Lake Champlain, excepting therefrom the county of Chittenden. The license was given upon the express conditions: (1) That the licensees should not plane plank or other material under the regular prices established by the mill-owners at Albany, Troy and New-York, as set forth in a tariff annexed to the license; (2) that they should not keep a depot for the sale of the manufactured products of the machines, beyond the limits of the territory assigned; or sell to others the products, to be carried out of said territory or sold as an article of merchandize; or dress plank or other material for other persons, to be carried out of said territory and resold as an article of merchandize.

On the 13th of November, 1846, Chauncey & Akin assigned all their interest and rights under the above license to the defendant Sherman. It appeared that he had been, since the beginning of May, 1850, and was now engaged in running two Woodworth machines in Vermont, within the assigned territory, at a place called Bascom's Mill, at the Elbow, adjacent to the town of Whitehall, N. Y. The mill was situated about half a mile from the head of the Champlain canal; and, since it had been in charge of Sherman, some 80,000 pieces of lumber had been planed there, and shipped through the canal to some of the principal markets in the state of New-York. The lumber thus planed and shipped belonged to the defendant William W. Cook, and was planed by Sherman under a contract, for a given price per foot. Cook had no interest in the mill or the machines, or in the running of them, and no connection with Sherman in the business of planing plank or other material, except as above set forth. The contract was completed about the 1st of July, 1850, and since then Cook had had no planing done at the mill, and no connection with it. The bill was filed June 27th, 1850.

George G. Sickles, for plaintiff.
Samuel Stevens, for defendants.

NELSON, Circuit Justice. There is very little if any doubt, as the case stands upon the proofs before us, that one of the conditions annexed to the grant of the license to run the four machines, and under which the defendant Sherman is engaged in operating the two, has been violated; and that, according to its terms and spirit, all right and title to run the same have become forfeited. One of the conditions is, that the licensees shall not dress plank or other material for other persons, to be carried out of said territory and sold as an article of merchandize. The restriction is twice mentioned in the agreement; once, by way of covenant on the part of the licensees, and again, as a condition of the grant; and the above is the substance and effect of the limitation.

It was suggested on the argument, that if it should be made to appear that the lumber planed had been sold in the territory embraced within the license, then the purchaser could rightfully carry the same out of said territory, and put it into the market for sale, and resell it as an article of merchandize. We think not. The true meaning, in our judgment, of the restriction and condition is this, that under no circumstances shall the planed article, with the privity or consent of the licensees, be sold out of the territory as an article of merchandize, or, with their privity or consent, be sold within the territory, to be carried out and resold as such article. It may be sold for any purpose or use within the territory, except for the purpose of being carried out of it for sale as an article of commerce. In other words, the licensees have the market unconditionally of the territory covered by the grant, and also beyond it, for all purposes except that of sale as an article of commerce. The object of this restriction is obvious, when we take into consideration the fact that the territory within which the licensees are authorized to run the machines is situated in the neighborhood of an extensive lumber region, and at the head of navigation leading directly to the great marts for the sale of the article, namely, the cities of Troy, Albany and New-York. An unconditional grant to operate the four machines at the given locality, would have seriously interfered with those already licensed and in operation at these several cities.

It has been supposed that the sub-contract made by Chauncey & Akin with Sherman is more liberal than the principal one between them and Wilson. We think not. On the contrary, the legal effect of it is the same. But, were it otherwise, the result would not be changed, as the defendant could acquire no greater rights from Chauncey & Akin, than they possessed under the grant from the plaintiff. "Ille non habet, non dat."

There is nothing in the suggestion that Wilson has made himself a party to the sub-contract in a way to bind him, without regard to the principal one with Chauncey & Akin. Had this motion been made while the defendant Sherman was engaged in planing the lumber for Cook, we should have felt bound, as the case is presented before us, under our view of the grant to Chauncey & Akin, to have interfered and enjoined him, on the grounds that the license set up, not only did not authorize the use made of the machines, but that such use was in direct violation of it. It appears, however, that this use terminated on the 1st of July, 1850, the contract with Cook having then been fully completed, and has not since been renewed. This particular ground, therefore, for a preliminary injunction has failed, as no beneficial object would be attained in granting one.

It has been urged on the part of the plaintiff, that an injunction should be granted on the ground of the forfeiture of the license, the defendant Sherman having violated one of the express conditions upon which it was granted. We think that this would be too rigorous an exercise of the power of the court, under all the circumstances that appear in the case. Sherman seems to have labored under a misapprehension of his rights as derived from his agreement with Chauncey & Akin, and to have unwittingly entered into the agreement with Cook to plane the .lumber in question. Under these circumstances, a compensation for the damages sustained, if it should turn out on the final hearing that he has been in the wrong, will afford the appropriate and fit remedy.

The grant has now been expounded, and the extent of his rights under the license, explained; and it is but just and reasonable to assume, that he will hereafter conform to the decision. If not, the plaintiff will be at liberty to file a supplemental bill, and move again, in case of a renewal of the violation of the condition in question, or of any condition annexed to the grant.

An objection has been taken by the counsel for the defendants to the jurisdiction of the court, on the ground that the use of the machines complained of was in another judicial district, namely, in the district of Vermont. It is supposed that proceedings grounded upon any such use should have been instituted within that district. The objection, we think, is not well founded. Proceedings for the purpose of restraining the unlawful use of a machine are instituted against the owner or party concerned in the infringement, who is personally responsible for the violation. The offending machine is reached through the party legally accountable for the wrong, and without whose agency, directly or indirectly, there would have been no ground of complaint.

The eleventh section of the judiciary act of 1789 (1 Stat. 78) gives jurisdiction over the party, in the district whereof he is an inhabitant, or in which he shall be found at the time of serving the writ. The defendants come directly within this provision.

We agree, that in a case where it might become necessary to proceed directly against the machine itself, as it may be in extreme cases of contumacy, or fraudulent contrivance to evade an injunction, the proceedings must be instituted in the district in which the machine is located. Act May 20, 1826 (4 Stat. 184); Conk. Prac. 288. But it is otherwise where the court act simply upon the guilty party. This question was involved in the case of Simpson v. Wilson, 4 How. [45 U. S.] 709, and which was again before the supreme court at its last term. Wilson v. Simpson, 9 How. [50 U. S.] 109.

Motion denied.

[For other cases involving this patent, see note to Bicknell v. Todd, Case No. 1.389.]